Thank you, Your Honor. May it please the Court, Michael Kerbs on behalf of the appellant Gregory Burnett. Today during oral argument I'd like to discuss the two principal issues on this appeal. First, the appealability of the District Court's denial of the motion to lift the stay, and then also the abuse of discretion committed by the District Court in denying that motion for relief from staying. Counsel, if we determined that we had no jurisdiction, because we determined it wasn't a final order and in practical effect or a collateral order, then of course we wouldn't have jurisdiction to assess the merits of the case. But I believe that the facts of this case and the laws applied to this case are sufficiently strong to demonstrate that in this case, this court does have jurisdiction under 28 U.S.C. 1291, under both the Moses H. Cone case, as that case was interpreted by the Ninth Circuit in Dependable Highway. This litigation was initiated by the two tribes in 2006, seeking to quantify their water rights and waters in the Santa Margarita River system. It is now 12 years old. The stated purpose in filing this litigation was that there was a concern by the tribes regarding development around the tribal land by the neighboring landowners. On June 30th of 2008, the initial stay order was granted by the District Court. Help me understand, what precisely was the claim against your client? The claim is that my client claims a right to some of the same water that is the subject of the attempt to adjudicate the water rights by the tribes. They live in the same area. The water that serves my client's land is the same water that the tribes seek to adjudicate or quantify their entitlement as far as the amount of water that they're entitled to. And the pendency of this claim prevents him from doing what? As a practical matter, it prevents him from developing his property. It prevents him from... Developing or selling his property? Well, both. I thought he had said selling his property, but it was developing his property. As well. The issue is whether or not he can obtain the permits necessary to develop the property, and part of that process is you have to obtain a permit through the County of Riverside that you have a water system that will support a development. And based upon the existence of this lawsuit and the stigma associated with this lawsuit, there has in fact been no development of any of the properties in the Anza Basin as far as mass development. So the stated basis as to why this litigation was initiated was a concern for development in the area, and in fact, this lawsuit and the stay that has now been over 10 years has in effect precluded that development. Counsel, Judge Gould, if I could interject a question. Yes, Judge. So all those arguments that you just made, those could all be presented to the district court which is exercising its discretion whether to extend the stay or stop it, and I assume you made those arguments below. But my question is, what evidence is in the record about whether or not the district court is continuing to address the issues here, and if the district court imposed a limited stay for like a set period, that he's going to keep doing that indefinitely to basically put you out of court? How do we know that? Well, I think 10 years is probably a pretty sufficient basis for showing that there is a continuing interest in continuing to stay on this case. The test under the Moses H. Kane Doctrine or Cone Doctrine and also under dependable highway as far as jurisdiction is, is the party effectively out of court? Well, this stay was issued in 2008. Mr. Burnett was added to the case in 2009 when the stay was already in place. He's never even had the opportunity to file a response of the complaint. So in January of 2017 when he filed his motion to lift the stay, that stay had already been in place for over nine years. The district court denied the motion and this appeal followed, but we submit that Mr. Burnett has effectively never been allowed to get into court. He has never had the ability to respond to the complaint. Typically a stay is issued on the basis that there is a collateral proceeding in another form that will impact the issues to be litigated in the district court case. There is no collateral proceeding in this case. There is no state court action. There's no arbitration. There's no administrative proceeding. All that there is is a settlement proceeding and that settlement proceeding has been ongoing for over 10 years. We found no reported cases that would support a stay that was issued solely to allow settlement negotiations. We found no reported cases involving a stay even remotely similar to 10 years in length. And we submit that the existence of the stay order, even though it is only entered for stated periods of time, the fact that it is extended over and over again and that it has existed for 10 years has effectively put Mr. Burnett out of court and therefore this court has jurisdiction to consider this appeal. The first factor in Cohen asked whether the order at issue determines the disputed questions. I was wondering if you could just help me with this. Is this similar to the inquiry we do under Moses? Because if we were to find that the order does not fall within Moses, then does this mean it does not conclusively determine the disputed question for purposes of Cohen? It seems like they're very closely related. Well, the reason that this falls within Cohen or within Cohen and not Cohen is because we have a party that's effectively out of court. The problem, we can't even get to the Cohen analysis because there are no circumstances where a case has been settled for settlement purposes where there can be any adjudication on the merits of the case. It simply cannot happen. There's no procedural mechanism in place that can require Mr. Burnett to consent to any settlement that is ultimately reached. At the end of the day, even if the other parties are somehow able to reach a settlement, which after 10 years seems doubtful, even if they can, there's no requirement that Mr. Burnett participate in the settlement and the district court's analysis that he can either object to the settlement or he can try and get his position adjudicated through the settlement doesn't make legal sense because an objection to a settlement is not nearly close to having an actual adjudication of his claims or his defenses in this case. He's not been able to raise his defenses. So this is not a class action? It is not. So we don't have the traditional problems of opt-outs and so forth. Each of these 3,000 defendants is individually named? Correct. And have been served. And another factor that was cited by the district court is the complexity of the case and the management of the case and the fact that there were 3,000 defendants that had to be served, but that already took place. Those defendants were But the management, the complexity of the case is still a valid reason, isn't it? It is, but there has to be a limit to that. All of the cases that talk about stays say that you can't have a perpetual state. You can't have an unlimited state. There has to be an end. But don't those cases, you know, the stay is, I mean, there's not any ongoing activity, whereas here there's reports every 90 to 180 days. Is that a distinguishing factor that is important here? It's not a distinguishing factor because just because there's progress doesn't mean that there's ever going to be a settlement. There is no guarantee in this case that there will ever be a settlement. We could get 5 years down the line, we could get 10 more years down the line, and we could be at 20 years, and we could be without a settlement. And that's a perpetual... The amount of water could change over the years. It conceivably could. There are other factors. The needs of the parties could change. But while that is ongoing, while the stay is ongoing, you have all of these property owners, including Mr. Burnett, who are effectively precluded from using their land for development purposes. And all of the cases that talk about why a stay should be lifted or why it should be removed, talk about the fact that justice delayed is justice denied. You can't continue this into perpetuity. And that's what's happening here. And the added complexity of having a settlement be the basis for a stay is that there's no guarantee that the settlement will ever be achieved. There's no guarantee that there will ever be a settlement. This is a circumstance where, although initially I could see why the district court would want to issue a stay for a short period of time, the circumstances have changed. Once you get past a year, once you get past 18 months, all of the cases say, that's too long. The dependable highway case, that was a finding that two years was too long because there was no evidence that the arbitration was going forward. The Blue Cross case, that was a case where they found that 18 months was too long. No court has ever even addressed the issue of whether 10 years is too long. Tell me what happens in these periodic settlement sessions. Well, Council for the Tribes would be better apt to respond to that question because they actively participate in. Well, do you go? No. Do the 3000 people go? There is a committee of landowners that was formed that has a voice, but that committee has actually been opposing the stays in recent years because of this very issue that there's been no development in the Anza Basin because of this lawsuit. And it continues to be an impediment to any development. One of the factors that the district court relied upon was the fact that, oh, there's a settlement agreement in place, or the parties are drafting a settlement agreement. So that means that settlement must be imminent. Well, the settlement agreement has been in draft form since at least 2012, as reflected in the record. So it's not that the existence of a settlement agreement is any indication that settlement is imminent. We also had statements in opposition to the motion to lift the stay in January of 2017 that they were hopeful that the settlement would be achieved within a year. That didn't happen. The existing stay in place goes through January of 2019. That would make it over almost 11 years that this stay has been in place. We submit that this is the time. These parties have had ample opportunity to try and resolve their disputes. This cannot go on forever. Mr. Burnett is entitled to file his response by way of his motion to dismiss and have his defenses adjudicated. So unless there are additional questions, I'll reserve the rest of my time. That's fine. Thank you. Good morning, Your Honors. Curtis Berkey for the Ramona Band of Cahuilla. The tribes are gonna divide their argument. I'm gonna address the appealability question, and my colleague, Lester Marston, for the Cahuilla Band of Indians will address the abuse of discretion issue. I'd like to begin by clarifying some of the facts that were alluded to by opposing counsel in his argument. The development... The question of whether the non-Indians can develop their property. To the extent that there are difficulties there, that is not directly tied to the pendency of the tribe's claims. The County of Riverside is... It's the State Water Resource and Control Board, actually. The County of Riverside requires a certification of a reliable water supply for 20 years before you can get a community water system permit. Mr. Burnett has a overlying correlative right based from the 1963 Interlocutory Judgment, which gives him a right to take whatever water is available, so long as he doesn't impair his neighbor's rights. But that judgment did not quantify his right. So even if the tribe weren't... The tribes are the wrong target here. Even if the tribe were not in this case, the county couldn't make that... Mr. Burnett could not give that certification... His water right is a state law overlying water right unquantified because of the Fallbrook Decree in 1963. So it's your position that this pendency of this suit does not impair his right to develop? Correct. Exactly, exactly. And there's no injunction in place. We ask for no preliminary relief of any kind. The complaint asks for an injunction at the end of the day, and the final decree, of course, to protect the water right that the court decrees. There's no injunction in place. There's nothing to do with the residual wells in the Thomas Ranch Mountain development. So why didn't you sue him? We sued him because the tribes had determined that... The tribes' rights were initially partially adjudicated in 1963, affirmed by this court in 1965. There was no development up there in the Anza Valley for many, many decades. Recently,  the tribes need to quantify their rights so they know with certainty and finality how much water they're going to be able to use in perpetuity, and equally important, the priority date for that water right. Because in times of shortage, if there's priority administration, that will mean that the senior right gets... That entity's right gets satisfied first, and then the junior rights follow thereafter. And Cahuilla, the Ramona Band's reservation created in 1893, we're arguing, one of the allegations in the complaint is that's the senior, that's the first priority. So it's a matter of protecting their right against potential future encroachment as development occurs in the valley, and the Cahuilla Band is in the same position. Counsel? Yes, sir. Go ahead, Judge Parker. I'll wait. Suppose the stay lasted another 15 years. Would we have jurisdiction? I don't think that even puts Mr. Burnett out of court. He had multiple opportunities to object to the stay, and he participated in the formation of this landowner defense committee in 2008, and for a number of years participated. In 2010, withdrew from that and has been standing on the sidelines since then. So I think it's up to the case, for now at least, anyway, he's not been out of court. If the stay were to... And again, as the court has noted, there is no indefinite... There's no stay that exceeds more than 180 days. Well, that's somewhat facetious because this claim is... I mean, excuse me, this stay is just... Seems to me to be just kind of routinely rolled over year after year after year after year. And so my question is, suppose it lasts another 15 years, does he get to come and object to the process before us? Well, I understand the question. I don't think it's fair to say that the... If the implication is that the stays are kind of automatically granted, and that the district judge... You recall that the settlement process is overseen by a magistrate judge, Ruben Brooks. We meet with him periodically. He has invited confidential settlement briefs about the progress we're making. He meets with us in his chambers, we discuss this. This is an engaged process whereby... Well, as I always told my girls, don't confuse effort with results. Let me just add another component to it. As I look at the record, there is no set end to this process in sight. It appears that the issues that the magistrate judge is wrestling with and the parties are trying to settle have to wrestle with are getting more complicated by the year. I think they're getting simplified, actually. If a stay were to last for another... I don't think the tribes would tolerate a stay that lasts 15 years. The tribes want to get this case done. We've been working really hard... I'm not talking about the settlement process, I'm talking about the issue that you say you're up here to argue about, which is appellate jurisdiction. If it lasts for another 15 years, is he out of court? If he had an opportunity to object to the motion, the joint motion to extend the stay on a periodic basis, and the stay had a beginning and an end, and the district court judge looked at the circumstances and determined whether those circumstances had changed according to the applicable legal standard, I don't think we can say that a stay that lasts that long is necessarily... Puts him effectively out of court. I mean, the question for me... He doesn't... In that hypothetical, he has... He's been hauled into court, claims are asserted against him. He says, and we'll clear this up with his counsel, that he has land he can't develop, which may or may not be the case. There's some dispute about that. But doesn't he have a right on some reasonable schedule to have the claims that your client have lodged against him adjudicated? And if he doesn't, why is he... Is he not out of court? Well, if the circumstances had not changed, and do not change from... Based on these periodic reviews by the district court, and the district court is simply rubber stamping this, and the case is just going on indefinitely, which is, I think, your question, then yes, I think he probably is effectively out of court at that point. But that's not what's happening here. That is not the process we have. We are... This is... The record, of course, is closed at the time the Notice of Appeal was filed, but we are making progress. I know Mr. Burnett has heard that before. We are getting closer and closer to getting a settlement. I'm optimistic about that happening. Would we have liked to have had this finished sooner? Of course. But Mr. Burnett had the opportunity to participate in that process as well, the settlement process. He can object to the stay, or he can participate in the settlement process. He did neither one. He stood by for a little good seven years, and now he's coming in and potentially upending a process which we think is nearing its end. Well, he probably has... I mean, it seems to me that's getting it backwards. He probably has better things to do with his time than to come to these meetings, and you're saying that having been hailed into court, he's got to participate in settlement conferences and settlement conventions year after year after year. I don't get that. I've never heard of anything like this. Well, his allegation is that dependency of the tribe's claims are impeding the development of his property. So it would behoove him to participate in the process. I mean, it's not... I mean, I don't know how he prioritizes his time, but this is a critical, apparently, a very serious problem that he's economically... So what you're saying is he missed seven years of meetings? Correct. Can I ask you a question? Your counsel here across the aisle from you says that we don't even get to the Cohen factors because of the Moses case, that he can't get past that. Do you agree with that? We don't get to the Cohen factors? If the Moses H. Cohen standard is not met, that he is... I'm not sure if I understand. I apologize. Yeah, I think that's what he said, because of Moses, and if we don't... If we don't meet Moses' standard, that we don't get to Cohen. Is that correct? No, you'd have to... I think you'd have to determine whether the order qualifies as a collateral order under the Cohen standard. And our position is it does not. Okay. So I just wanted to make sure, because unless I misunderstood him, I thought that's what he was saying. So I just wanted to make sure. I'll reserve the remainder of my time. Judge Gould, did you have a question? Yeah, I guess I wanted to ask the tribes lawyer first. How long a series of stays of limited term can be extended before it's practically an indefinite term? Well, my response to that is that it really depends on the circumstances. It depends on whether... If the district court is not examining the circumstances during the... At the end, when the stay expires, and is simply rubber stamping the applications to extend that, and that goes on and on for years and years, then I don't know if I could fix a date certain in the future when that would occur. It seems to me there would come a time in which that would be true. Okay. In some other contexts... Does that mean that every time there's a stay, if what you say are the determinative considerations, that every time there's a stay, we've gotta look at the adequacy of the district court's consideration of the factors that... Or the evidence that's presented to it in support of the stay. And if there's a motion to lift the stay, which is denied, and it's appealed to this court, then yes, you would have to determine... I think that goes to the abuse of discretion question. It seems to me the fundamental problem with all of this is that the procedures that these defendants are saddled with just eviscerates the purpose of courts, of Article III courts, which is to get controversies resolved. You can just stay something year after year after year and take us on faith that we're making progress. There came a time a couple of years ago... That's not what courts do. When it looked as if the negotiations had reached a stalemate, and the judge asked the parties to prepare, the settlement parties, to prepare a proposed discovery plan, that was prepared. There was discussion about that. This is a... These negotiations, it's a roller coaster. We get close to settling, new issues come up. It's the nature of the process. So all that suggests is that there's no end in sight based on what you just told us. The end is in sight. As I say, the tribes are... Limited resources are not going to be part of a settlement process that goes on for another 10 or 15 years. I think we would prefer to litigate. If we litigate this case, the average length of time for Indian water rights litigation, as you probably know, is decades. So this is actually a shortened period of time. Counsel, I have a question about our... Counsel, I have a question about our jurisdiction. If we concluded that there's no final order now, that the requirements of the Cohen case or the Cohen case are not met, and there's no jurisdiction, do we have jurisdiction in our order to say, that's true now, but as to the course of conduct here, if the stays are extended beyond a certain period of time, the court will have jurisdiction? I would think that that's in the nature of an advisory opinion. If you don't have jurisdiction to review what the district court did, the order here, I wouldn't think you would have jurisdiction or authority to issue any orders related to that order. That's my response. Okay, thank you. I think it's still morning. Good morning, Your Honor. Lester Marston on behalf of the Cuyah Band of Indians. May it please the court. Your responsibility today is not to reweigh the competing interests or reweigh the evidence in this case. That was done by the district court. That was the district court's job. And unless the court, the district court, clearly abused its discretion, did not adequately weigh the competing interests or did not find that there was sufficient evidence in the record to support its determination that this case qualified for a stay, you need to affirm the district court's decision. And that's exactly what the district court did in this case. The district court did everything right in accordance with the law. Suppose the stay continued for another 15 years. Would we have jurisdiction at that point? Same thing happened that happened at the last settlement convention. Well, and you have to remember, this is one party who's saying he doesn't want the stay to remain. We get that. I understand that. There are thousands of parties that are at the table negotiating, looking at, and it's the district court that's in the best position to determine the complexity of the issue. I understand all that, but I would be helped if you would answer my question. I apologize. Could you repeat the question, Your Honor? Suppose the stay lasted for 15 years and these things... Remind me, is it 180 days or is it renewed annually? No, the district court requires us every three to four months to come back to the district court and demonstrate to the district court that we're making progress in the settlement. So suppose every time you come back, the district court says, I'm satisfied that you're working diligently to resolve this case, so I'll keep the stay in place. My question is, is there some date at which, time period at which that's no longer acceptable? Well, of course. 15 years was the time I was dialoguing with your colleague about. Well, the Supreme Court and the decisions of this court haven't said that there's a specific time period by which... We've never seen a case like this. Well, again, with the standard that you're to apply is that... Based on the evidence before the district court, can the case settle within a reasonable period of time? Are the parties making progress toward reaching a global settlement? 10 years is a long time. I've never heard of a settlement convention lasting 10 years. Well, you have to understand, Your Honor, there's an upper basin and a lower basin, and one of the things you have to realize is the lower basin portion of the case settled just recently. If you look at the district court's decision, it was one of the factors. He had recognized that the parties had reached its settlement and that the issue was going to Congress for approval and was coming back to the court for approval, which occurred... Does this settlement have to get congressional approval? Absolutely, Your Honor. The time period to get the average time period... This is not going to... This is... The average time period... I'm sorry to interrupt you, but the average time period to get congressional approval alone in these cases can take up to five to six years because of the process. So this case is never going to settle in our lifetime? Well, as I just said, a good indication is the lower basin party's just settled. But then they have to go to Washington. They... So the... So... Washington approved their settlement. Oh, alright. Okay. Washington approved the settlement and went back to the district court. And that actually helped us, the parties in the upper basin, with respect to our settlement possibilities. So when is this going to settle? What do you think? You want my opinion? My opinion on behalf of my clients, representing my clients, we need to quantify our water rights. I have 600 members that don't have homes on the reservation because we don't have a definitive amount of reliable water to provide a potable water supply to residents. So just like Mr. Burnett, development on the reservation is not occurring, not for residential development anyway. So if we can't reach a settlement of this case within a relatively short period of time, we're going to call off the settlement and we're going to go to litigation because we don't have any other alternative. When are you going to do that, do you think? My client's going to do that at the point where we reach impasse in the settlement negotiation process, where we are no longer identifying issues and solving those issues. When we reach that point, then we're going to call off the settlement and we're going to court. Alright. Judge Gould, do you have any other questions? I have the same question I asked your colleague, who told me that my idea of whether we would be able to put a term of years in our ruling, he felt that we couldn't do that, it would be an advisory opinion. However, it does occur to me that in discussing the arguments of Burnett, saying there's practical finality, that we could certainly say that he's alleged this could go on forever. And we could have an analysis that said that if the stays are extended beyond a certain period of time, it seems likely that there would be finality, practically. Now, maybe your colleague says that's an advisory opinion, but I wanted to know what you thought, because there has to be some way to get a case, then to the district judge, that this is not going to go on forever, from our perspective. Well, I think there's really two finality issues here. There's the issue of whether he is effectively out of court because of the length of time that goes to your issue of jurisdiction. But separate and apart from that, which is the issue that I'm addressing, is whether or not the district court abused its discretion. And in granting the stay, the district court has to weigh the competing factors. His interest is his right to get his water right adjudicated. I understand that and your argument on that, but I thought that we could not reach that issue of abuse of discretion, if in fact there's no finality and no final order. That's correct. If you don't have jurisdiction, then you don't have jurisdiction to address the issue of whether the district court abused its discretion. I fully agree with you. So I apologize for interrupting your argument, but I'm having trouble not putting first things first, from my perspective, and trying to figure out if we have jurisdiction, or if we don't have jurisdiction, if there is any way we could light a fire that would help get this to conclusion. If you don't have jurisdiction, then other than to express in writing your opinion that you don't have jurisdiction, your concern is that at some point in time, the length of time has to be considered in determining whether or not he's effectively out of court. And I agree with that. I don't think he's effectively out of court at this point for a whole variety of reasons, which my distinguished colleague raised. Most importantly is the fact that the tribes have never sought to enjoin his development. The right to have his water right adjudicated and quantified, he says, is necessary for him to develop his project, and that's his interest. But in fact, he is free right now to start drilling wells and put in wells, to provide wells for each of the individual homes, and he can go forward with his project. Is that an economic way to develop these home sites? No, but we also, in the settlement process, and it was the Cahuilla tribe that raised it, we think that there's a solution to his problem. We have raised that issue in the settlement negotiations, and we are active, the parties, without him. It would be great to have him participate and help us, but we think we're coming up with a solution to address his issue so he can get his community water permit. But when you compare his interest to have his right to adjudicate his water right and quantify his right, compared to the thousands of others, the moment you give him the right to go into court and adjudicate his right, then we are in the litigation mode. Even if we only have one or two issues left to resolve to reach a global settlement, we are in a litigation mode because the district court can't determine what his rights are without affecting my client's right. So now we're going to have expert witnesses on what's the practical irrigable acreage, what's the sustainability of the basin, whether or not, for enforcement purposes, the basin has to be, wells have to be installed and have to be monitored. There is such a complexity of issues in this case that the majority of us, the thousands of other parties to this litigation, we recognize that if we can work out a settlement that benefits everybody so that everybody wins, as opposed to litigation, which Mr. Burnett can roll the dice, but if he loses, my clients have a priority date that goes to 1871, and we have a right to irrigate all of the practical irrigable acreage on the reservation, which is, according to our expert witness, is well over the amount of water that's in the basin. And in a water shortage, it means that nobody else gets any water. All right. Thank you very much. You're welcome. Appreciate it. Thank you. Just a couple of follow up issues. I think I'm a bit confused on what your client can and cannot do in terms of development. What he can do, as a practical matter, is he can develop his property by individual wells. So he could put a house on the property and he could then service that house with a well. For 500 acres, if you wanted to build houses on one acre lots, then you would have to drill and develop 500 separate wells, which is... And alternatively. Alternatively, you have a water system which collects and distributes the water through an established water system, and that's what developers do. And that's less costly and what makes the houses more desirable. What are the trade offs there? I'm not a... It's substantially less costly and it's also substantially preferable to a homeowner to have an established water system as opposed to having to rely upon a well as the source of water. Thank you. Why my client is out of court is that he's never been able to address this case on the merits. He's always been forced by the terms of the state to participate in the settlement. And his claim or his defense to this action is that his water rights predate the tribal rights. They talk about their water rights going back to 1871. He says his water rights go back to 1863 and that they come from a grant under the Railroad Act. So that's the basis of the motion to dismiss. If we're right and he has priority, then we should be dismissed from the lawsuit. We have no opinion on that question. I understand, but that's why he's effectively out of this case because he can't raise that defense. As far as the abuse of discretion, I will point out that the standard to be applied by this court is less deferential than what you would normally consider on an abuse of discretion standard. On the Cohen, the reason that I said that I don't think that it can be applied in this case is the first factor is that there's a disputed question based upon the existence of the order, meaning that the order that is being appealed conclusively determines an issue. In this case, the order that's being appealed, the only conclusive effect is the stay is in place while the settlement negotiations are ongoing. So it's not an order that determines an actual legal issue, such as if the stay was in place to allow an administrative proceeding to make a final determination. It's a stay that is in place to allow for a settlement, which could never end, and there is no effective end date. And that is the difference between this and what you normally see on a stay. Judge Parker said he was a trial judge. Trial judges know how to settle cases. You settle cases by giving parties a trial date. You give them an incentive to settle. There's no incentive to settle this case, as long as the stay is left in place. Give them a trial date, lift the stay, this case will settle. Thank you very much. Appreciate arguments on this. Thank you both. Very interesting case. That's the case of Ramona Band of Coahuila and Coahuila Band of Indians versus Gregory Burnett is now submitted.
judges: Parker, Gould, Murguia